**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| DAWN FOWLKES and ZAIRE BETHEA, on behalf of themselves and all others similarly situated, | Case No. 4:16-cv-501 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| SWC GROUP, LP D/B/A SOUTHWEST CREDIT SYSTEMS | **JURY TRIAL DEMANDED** |
| Defendant. | |

DAWN FOWLKES and ZAIRE BETHEA ("Plaintiffs"), individually and on behalf of all other persons similarly situated, bring this action against Defendant SWC GROUP, LP d/b/a SOUTHWEST CREDIT SYSTEMS ("Defendant") to stop Defendant's practice of making unsolicited and illegal debt collection calls to the telephones of consumers nationwide, and to obtain redress for all persons injured by its conduct. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**INTRODUCTION**

1. Defendant is a debt collector that engages in reckless and aggressive debt collection practices which outright ignore the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), Texas law, and the rights of the called parties.

2. Defendant conducted (and continues to conduct) wide scale debt collection campaigns and repeatedly made unsolicited calls to consumers' telephones without consent, in violation of the TCPA. Defendant made one or more unauthorized calls to each Plaintiffs' cell phone using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the

1

purpose of collecting a debt from a party other than Plaintiffs. Defendant does not verify the accuracy of consumers' contact information or "scrub" cell phone numbers using any of the publicly available reassigned number lists. Defendant also called Plaintiffs after they clearly stated they did not wish to be called again. Defendant should have placed Plaintiffs' names on its federally-mandated Internal Do-Not-Call List, but failed to do so.

3. The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. Plaintiffs file the instant lawsuit and seek an injunction requiring Defendant to cease all unsolicited ATDS calling activities to consumers and an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

4. By making the telephone calls at issue in this Complaint, Defendant caused Plaintiffs and the members of a putative Class of consumers (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the monies paid to their carriers for the receipt of such telephone calls.

## PARTIES

5. Plaintiff Dawn Fowlkes is a natural person and citizen of Westchester, Pennsylvania.

6. Plaintiff Zaire Bethea is a natural person and a citizen of Clifton Heights, Pennsylvania.

7. Defendant SWC GROUP, LP D/B/A SOUTHWEST CREDIT SYSTEMS is a limited partnership organized under the laws of the State of Texas. Defendant maintains its principal

office in Carrollton, Texas, and may be served with process through its registered agent, Jeff A. Hurt, 4120 International Pkwy., Ste. 1100 Carrollton, TX 75007.

8. Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

10. The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District. Furthermore, Defendant has purposefully availed itself of the protections of Texas law, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice. For these same reasons, venue is proper in this District.

11. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of the putative class is a citizen of a state different from Defendant. Furthermore, the Plaintiffs Class consists of at least one hundred members.

**LEGAL BASIS FOR THE CLAIMS**

**The TCPA**

12. Congress enacted the TCPA in 1991 to address certain practices thought to be an invasion of consumer privacy and a risk to public safety. The TCPA and the Federal Communications Commission's ("FCC") implemented rules prohibit: (1) making telemarketing calls using an artificial or prerecorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent. If the call includes or introduces an advertisement, or constitutes telemarketing, consent must be in writing.[1] Calls that include non-marketing messages require consent, but not written consent. The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation, as well as injunctive relief.

13. Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying specific aspects of the TCPA. The most recent, FCC Omnibus Order of July 10, 2015, (the "Order") provided further protection to consumers by, among other things, clarifying that ATDS is broadly defined, confirming liability attaches to calls made to the wrong number or reassigned number, and clarifying consumers may revoke consent through reasonable methods. *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(8).

F.C.C.R. 7961, (July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order. The Order defines an "autodialer" as equipment/software that has the future capacity to dial randomly or sequentially. "In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." The Order clarifies the meaning of "capacity" and that "any call" made using a device with the capacity to serve as an ATDS requires consent under the TCPA, even if the caller is not "actually…using those functionalities to place calls" at the time. *Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015).

14. The Order also states that calls placed to the wrong number or a reassigned number are made with knowledge of the error after the first call; and consumers may revoke consent through any reasonable method, including orally: "[w]e clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber. If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such;" "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."

15. Furthermore, the TCPA established the National Do-Not-Call List, and also mandates all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC"). See 47 C.F.R. § 64.1200(d). The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]." *Id*. The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf

5

the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry. *Id.* at § 64.1200(d)(3), (6). Any company, or someone on the company's behalf, who calls a member of the company IDNC is liable to that person under the TCPA. The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

16. Finally, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

17. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## COMMON FACTUAL ALLEGATIONS

18. Defendant is a debt collector that engages in reckless and aggressive debt collection practices which run roughshod over the statutorily protected rights of the called parties.

19. Plaintiffs bring the present action because Defendant has repeatedly violated the TCPA by calling Plaintiffs and the Proposed Class via ATDS without prior express written consent and/or after Plaintiffs revoked consent. Defendant also violated the TCPA by contacting individuals listed on its IDNC; or Defendant has simply ignored the TCPA and failed to implement a legally compliant IDNC altogether. As further detailed herein, Plaintiff Bethea was not the debtor Defendant was looking for when Defendant began making unsolicited calls to his cell phones. Thus, Defendant never had consent to place the calls. Plaintiffs would show that

Defendant knowingly and willfully engaged in this conduct because Defendant continued to place calls to their cell phone and the cell phone numbers of the Proposed Class despite the fact that they were listed (or should have been listed) on Defendant's IDNC.

20. Defendant ignored Plaintiffs' and the Proposed Class members' requests, failed to observe its IDNC (to the extent it has one), and continued to call Plaintiffs and the Proposed Class members. Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, bring this action to prevent Defendant from engaging in this continued course of conduct, and seek compensation for themselves and the Class of $500.00 for each negligent violation by Defendant, treble damages of $1,500.00 for each knowing and willful violation, and injunctive relief.

## FACTS SPECIFIC TO PLAINTIFF DAWN FOWLKES

21. Beginning around January 2016, Fowlkes began to receive calls from the number 267-546-5931, which is associated with Defendant. At the time Fowlkes filed this lawsuit, she had received at least 36 calls from Defendant.

22. Fowlkes received all calls described above on her cellular telephone assigned a number ending in 1003.

23. Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Fowlkes' prior express written consent.

24. Fowlkes was able to answer at least some of these calls and interact with the caller's live representative after being transferred by the dialing system.

25. When Fowlkes answered the calls, there was a momentary pause ("dead air") before Defendant's live representative engaged on the other end of the line.

26. Fowlkes believed the purpose of Defendant's calls was to collect on an allegedly past due debt. Fowlkes informed Defendant's live representative that she wanted Defendant to stop calling.

27. Fowlkes asked to be taken off of Defendant's call list. Yet, Defendant continued to call.

28. To the extent that Fowlkes ever provided consent to be called, she revoked any such consent.

29. Fowlkes felt the calls were an invasion of her privacy and asked Defendant to stop calling. Defendant ignored Fowlkes' request and continued to call her.

30. The calls also occupied Fowlkes's telephone line and interfered with her use and enjoyment of her cellular telephone, for which she paid valuable consideration.

31. Based on the circumstances of the calls (e.g. dead air, large volume of calls, continuing to call after protest), Fowlkes believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

32. On information and belief, Defendant's ATDS called Fowlkes on every occasion.

33. The telephone number Defendant called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

34. Fowlkes is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 1003.

35. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

36. Fowlkes did not provide Defendant with prior express written consent to place calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

37. All calls Defendant made to Fowlkes violate 47 U.S.C. § 227(b)(1).

38. Fowlkes' overriding interest is ensuring Defendant ceases all illegal debt collection practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

39. In order to redress injuries caused by Defendant's violations of the TCPA, Fowlkes, on behalf of herself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

40. On behalf of the Plaintiff Class, Fowlkes seeks an injunction requiring Defendant to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF ZAIRE BETHEA

41. Beginning around February 2016, Bethea began to receive calls from the number 267-546-5931, which is associated with Defendant. At the time Bethea filed this lawsuit, he had received at least 40 calls from Defendant.

42. Bethea received all calls described above on his cellular telephone assigned a number ending in 9418.

43. Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Bethea's prior express written consent.

44. Bethea answered several of Defendant's calls in order to speak with a live representative.

45. When Bethea answered the calls, there was a "short pause" before Defendant's live representative came on line and asked for someone else.

46. Bethea believed the purpose of Defendant's calls was to collect a debt from a person other than Bethea.

47. When Bethea would answer the calls, Defendant's live representative would ask by name for someone else.  Bethea informed Defendant's live representative that he was not the person Defendant was intending to call.

48. Bethea further requested to be put on Defendant's IDNC list.

49. To the extent that Bethea ever provided consent to be called, he revoked any such consent.

50. At the time of the calls, Bethea did not have a business relationship with Defendant.

51. Bethea felt the calls were an invasion of his privacy and asked Defendant to stop calling.  Defendant ignored Bethea's request and continued to call him.

52. The calls also occupied Bethea's telephone line and interfered with his use and enjoyment of his cellular telephone, for which he paid valuable consideration.

53. Based on the circumstances of the calls (e.g. dead air, large volume of calls, continuing to call after protest), Bethea believed Defendant called his cellular telephone using an ATDS that mechanically selected his number from a computer database.

54. On information and belief, Defendant's ATDS called Bethea on every occasion.

55. The telephone number Defendant called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

56. Bethea is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 9418.

57. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

58. Bethea did not provide Defendant with prior express written consent to place calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

59. All calls Defendant made to Bethea violate 47 U.S.C. § 227(b)(1).

60. Bethea's overriding interest is ensuring Defendant ceases all illegal debt collection practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

61. In order to redress injuries caused by Defendant's violations of the TCPA, Bethea, on behalf of himself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

62. On behalf of the Plaintiff Class, Bethea seeks an injunction requiring Defendant to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

A.  CLASS ALLEGATIONS

63. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of themselves and the following Classes defined as follows (the "Class"):

> **Autodialer Class:** All individuals in the United States who received a call made by or on behalf of Defendant to the individual's cellular telephone through the use of an automatic telephone dialing system or any other device having the capacity to dial numbers without human intervention,

from October 16, 2013 to the date that class notice is disseminated, where Defendant's records fail to indicate prior express written consent from the recipient to make such call.

**IDNC Class:** All persons within the United States who, 30 days or more after requesting Defendant cease all calls, received any calls from Defendant, from October 16, 2013 to the date that class notice is disseminated.

**Wrong Number Class:** All persons in the United States whose (1) cellular telephone number has been called by Defendant; (2) more than once; (3) with an artificial or prerecorded voice and/or an automatic telephone dialing system; and (4) such calls were "wrong numbers" where the person subscribing to the number called was not the same person Defendant's records show it intended to call, (5) from October 16, 2013 to the date that class notice is disseminated.

64. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiffs' counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

65. This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

66. Plaintiffs reserve the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

67. Plaintiffs and members of the Class were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through agents, illegally contacted Plaintiffs and the

Class' members *via* their cellular telephones by using an ATDS, thereby causing Plaintiffs and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid; continuing to call Class members after they requested the calls cease or to be placed on Defendant's IDNC list; and invading the privacy of Plaintiffs and the Class members.

**B.   NUMEROSITY**

68.   The exact sizes of the Class are unknown and not available to Plaintiffs at this time, but it is clear individual joinder is impracticable.

69.   On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendant's records.

**C.   COMMONALITY AND PREDOMINANCE**

70.   There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class.

71.   Common questions for the Class include, but are not necessarily limited to the following:

    a.   Whether Defendant's conduct violated the TCPA;

    b.   Whether Defendant systematically made auto-dialed or pre-recorded calls to consumers who did not previously provide Defendant and/or its agents with prior express written consent to receive such phone calls after October 16, 2013;

    c.   Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct;

    d.   Whether Defendant called consumers with re-assigned numbers that appear on publicly available databases of re-assigned numbers.

      e.      Whether Defendant placed calls to consumers after those consumers requested Defendant stop calling; and

      f.      Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

### D. TYPICALITY

72. Plaintiffs' claims are typical of the claims of the other members of the Class.

73. Plaintiffs and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiffs and the Class.

### E. ADEQUATE REPRESENTATION

74. Plaintiffs will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

75. Plaintiffs have no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

### F. POLICIES GENERALLY APPLICABLE TO THE CLASS

76. This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

77. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

### G. SUPERIORITY

78. This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy

given that joinder of all parties is impracticable.

79. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

80. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

81. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

82. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
(VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

83. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

84. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.* and 47 C.F.R. §64.1200, *et seq.*

85. As a result of Defendant's violations of 47 U.S.C. § 227, *et seq.*, and 47 C.F.R. §64.1200, *et seq.*, Plaintiffs and the Class Members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

86. Plaintiffs and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
### (KNOWING AND/OR WILLFUL VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

87. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

88. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.* and 47 C.F.R. §64.1200, *et seq.*

89. As a result of Defendant's violations of 47 U.S.C. § 227, *et seq.*, and 47 C.F.R. §64.1200, *et seq.* Plaintiffs and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

90. Plaintiffs and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## JURY DEMAND

91. Plaintiffs, individually and on behalf of the Class, demand a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for relief and judgment as follows:

1. An order certifying this action as a class action and appointing Plaintiffs and their counsel to represent the Class.

2. For the first cause of action:

- An award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227, *et seq.*;

- Preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with automated dialing systems to cellular phones without prior express consent, placing calls to the wrong number, and placing calls to members of Defendant's IDNC;

- Attorneys' fees, costs and any and all other relief that the Court deems just and proper.

3. For the second cause of action:

- Plaintiffs and Class members are entitled to and request $1,500.00 in statutory damages, for each and every violation , pursuant to 47 U.S.C. § 227, *et seq.*;

- Preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with automated dialing systems to cellular phones without prior express consent, placing calls to the wrong number, and placing calls to members of Defendant's IDNC;

- Attorneys' fees, costs and any and all other relief that the Court deems just and proper.

Dated: July 8, 2016                               Respectfully Submitted,


                                                  */s/ Jarrett L. Ellzey*_____
                                                  W. Craft Hughes
                                                  Jarrett L. Ellzey
                                                  **HUGHES ELLZEY, LLP**
                                                  2700 Post Oak Blvd., Ste. 1120
                                                  Galleria Tower I
                                                  Houston, TX 77056
                                                  Phone: (713) 554-2377
                                                  Fax: (888) 995-3335
                                                  E-Mail: craft@hughesellzey.com
                                                              jarrett@hughesellzey.com


                                                  Bryant Fitts
                                                  **FITTS LAW FIRM, PLLC**
                                                  2700 Post Oak Blvd., Suite 1120
                                                  Houston, Texas 77056
                                                  Phone: (713) 871-1670
                                                  Fax: (713) 583-1492
                                                  Email: bfitts@fittslawfirm.com

                                                  Mark A. Alexander
                                                  **MARK A. ALEXANDER, P.C.**
                                                  5080 Spectrum Drive, Ste. 850
                                                  Addison, Texas 75001
                                                  Phone: (972) 364-9700
                                                  Fax: (972) 239-2244


                                                  **ATTORNEYS FOR PLAINTIFFS**